# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0677V

| | |
|---|---|
| SANDY JUBRAN,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: October 30, 2024 |

*Sean Franks Greenwood*, Greenwood Law Firm, Houston, TX, for Petitioner.

*Naseem Kourosh*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On January 12, 2021, Sandy Jubran filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine on December 5, 2018. Petition at 1.

For the reasons discussed below, I find that it is more likely than not that Petitioner received a flu vaccine on December 5, 2018, as alleged.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

### I.    Relevant Procedural History

After initiating her claim, Petitioner filed the affidavit and medical records required by the Vaccine Act. *See* Exs. 1 - 5, filed April 12, 2021, ECF No. 8. On the same date, Petitioner also filed a status report indicating that she was still waiting to receive her vaccination record. ECF No. 9. Despite her documented efforts to provide this record, however, Petitioner later determined that it could not be found. ECF No. 23. On December 30, 2022, Respondent filed his Rule 4(c) Report opposing compensation because "[Petitioner] has not provided a vaccination record and there is no documentation of a flu vaccination on [December 5, 2018]." Rule 4(c) Report at 7.

In a Scheduling Order filed on April 25, 2023, I expressed the tentative view that based on review of the existing record, a hearing would not be necessary, and that I could issue a factual ruling regarding proof of vaccination after giving the parties an opportunity to file briefs. ECF No. 30. Petitioner filed her brief on June 9, 2023, and Respondent filed his response on July 13, 2023. ECF Nos. 34, 35. Petitioner filed a reply on July 20, 2023. ECF No. 37.

### II.    Issue

At issue is whether Petitioner received a flu vaccine intramuscularly in her left deltoid on December 5, 2018.

### III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this is

not an iron-clad rule. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time but that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.     Findings of Fact

I make these findings after a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following evidence:

- In a December 3, 2018 email to its employees, Memorial MRI and Diagnostic's human resource department stated that "[Memorial Clinical Associates] will be here this week to give . . . employees [f]lu shots." Ex. 9 at 2.

- In her January 8, 2020 affidavit, Petitioner represents that she received a flu vaccine in her left arm on December 5, 2018 at Memorial MRI & Diagnostic ("MMD") – her place of employment – and confirms that it was administered by Memorial Clinical Associates ("MCA"). Ex. 1 at 1.

- Petitioner also maintains that "[i]mmediately after the injection, I commented to the nurse that this vaccination hurt more than any vaccination I previously had." Ex. 1 at 1.

- In an affidavit dated July 6, 2021, Delha Ramirez states that "[o]n December 5, 2018, MMD contracted with [MCA] for flu vaccinations for all employees. MCA administered flu vaccinations to both Petitioner and me." Ex. 7 at 1.

- In a July 2, 2021 affidavit, Neda Moayeri states that "[o]n December 6, 2018, Petitioner came into MMD complaining about severe pain in her left shoulder following a flu vaccination she had received the day before." Ex. 6 at 1.

- Anthony DeMoss, MMD's Clinical Manager, completed an incident report form on March 18, 2019 (a little more than three months post-vaccination). Ex. 10 at 1-2. In it, he states that "[o]n 01/17/19 – [Petitioner] approached me and stated that she had recently gotten a flu shot from MCA on 12/5/18 . . . [t]hat since then her left shoulder hurt and she believed it was from the shot." *Id.* at 1.

- Petitioner visited Dr. Alan J. Rechter at Orthopaedic Associates L.L.P. on March 26, 2019. Ex. 4 at 13-14. On the intake form, Petitioner noted that she suffered from "[left] shoulder pain/[limited range of motion] right after flu shot injection 12-5-18." *Id.* at 15.

- Dr. Rechter's notes from March 26, 2019 indicate that Petitioner "had a flu shot into her left shoulder on 12/05/2018, and has had pain ever since." *Id.* at 13.

- Petitioner visited Dr. Rechter for a follow-up evaluation on April 16, 2019. Ex. 4 at 12. The report states that Petitioner "had a flu shot on 12/05/2018, and she is just not happy that she has not gotten better." *Id.*

4

- On May 21, 2019, Petitioner again followed up with Dr. Rechter concerning her left shoulder pain. Ex. 4 at 7. The medical notes indicate that her symptoms were "from a flu shot injection that was delivered to her at work." *Id.*

- On November 8, 2021, Petitioner visited Dr. Volkan B. Guzel concerning left shoulder pain. Ex. 8 at 1-3. Petitioner stated "she received a flu vaccine that she felt went into her skin incorrectly. She states the incident occurred in 12/2018 but she is still having symptoms." *Id.* at 1.

To prevail under the Vaccine Act a petitioner has one foundational evidentiary obligation applicable to any claim: that she "received a vaccine set forth in the Vaccine Injury Table." Section 11(c)(1)(A). Additionally, when alleging a Table SIRVA injury as in this case, a petitioner must show she received the vaccine intramuscularly in her injured upper arm/shoulder. 42 C.F.R. § 100.3(c)(10) (2017) (Qualifications and Aids to Interpretation for a Table SIRVA).

In many Program cases, direct proof of vaccine administration is missing. But when presented with sufficient preponderant *circumstantial* evidence – such as consistent references in contemporaneously created medical records and/or credible witness testimony – special masters often determine that an alleged vaccination did likely occur even without a written contemporaneous record directly memorializing the event. *See,* e.g., *Hinton v. Sec'y of Health & Hum. Servs.,* No. 16-1140V, 2018 WL 3991001, at *10-11 (Fed. Cl. Spec. Mstr. Mar. 9, 2018); *Gambo v. Sec'y of Health & Hum. Servs.,* No. 13-0691V, 2014 WL 7739572, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 18, 2014); *Lamberti v. Sec'y of Health & Hum. Servs.,* No. 99-0507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007). Of course, not every case can succeed where such direct proof is lacking; evidence relating to proof of vaccination has been found to be insufficient in cases where there are inconsistencies related to Petitioner's vaccination status and/or the events surrounding vaccination. *Matthews v. Sec'y of Health & Hum. Servs.,* No. 19-0414V, 2021 WL 4190265, at *6-7, 9 (Fed. Cl. Spec. Mstr. Aug. 19, 2021), *aff'd,* 157 Fed. Cl. 777 (2021) (petitioner's reliance primarily on later notations of an allergic reaction).

Here, Petitioner has marshaled enough evidence for me to conclude that she more likely than not received the flu vaccine on December 5, 2018. The records indicate that Petitioner cited this precise date on four separate occasions, and within six months of vaccination as well. *See* Ex. 4 at 15 (March 26, 2019 intake form on which Petitioner reported a December 5, 2018 vaccination date); *id.* at 12-13 (March 26 and April 16, 2019 medical notes documenting Petitioner's description of a vaccination that took place on December 5, 2018); Ex. 10 at 1 (March 18, 2019 incident report form indicating that Petitioner reported getting "a flu shot . . . on 12/15/12"). Moreover, the document

5

memorializing Petitioner's March 18, 2019 appointment with Dr. Guzel indicates that Petitioner "received a flu vaccine that . . . went into her skin incorrectly" and that "this incident occurred in 12/2018." Ex. 8 at 1.

Additionally, Petitioner has produced a December 3, 2018 email from her employer stating that "MCA will be here this week to give . . . employees [f]lu shots" and witness statements confirming that Petitioner received the vaccine in December 2018. Ex. 9 at 1; Exs. 6, 7. Thus, even though the fact of vaccination cannot be conclusively established with the actual vaccine administration record, the evidence convincingly preponderates in favor of the finding.

### V.   Scheduling Order

In light of my findings regarding proof of vaccination, Petitioner should finalize a reasonable demand which she should convey, along with any needed supporting documentation, to Respondent at any time. Respondent should consider his tentative position in this case.

**Respondent shall file a status report indicating how he intends to proceed following my Ruling by no later than Friday, December 13, 2024.**

IT IS SO ORDERED.

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
